# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RHOADS INDUSTRIES, INC., et al. | : NO. 15-921 |
| v. | : |
| SHORELINE FOUNDATION, INC., et al | : |
| RHOADS INDUSTRIES, INC., et al. | : |
| v. | : NO. 17-266 |
| TRITON MARINE CONSTRUCTION CORP. | : |

## MEMORANDUM OPINION: DAMAGES

Plaintiffs Rhoads Industries, Inc. and Rhoads Marine Industries ("Rhoads") have brought these related actions against Defendants Shoreline Foundation, Inc. and TranSystems Corp. in case number 15-921 and against Triton Marine Construction Corp. in case number 17-266. Rhoads claims that its Dry Dock 2 within the former Navy Yard Complex suffered significant damage in 2012–2013 and again in 2015 as a result of improper pile driving by these Defendants. The parties have now come before the court seeking a ruling on the question of whether the "special use" or "special purpose" (hereinafter "special use")[1] damage analysis put forward by Rhoads is appropriate here.

**PARTIES' POSITIONS**

Rhoads posits that the court must consider the question of damages based upon the "complete cost-of-repair" without any limitation imposed by a fair market value cap (FMV) as of the time of the loss. (Doc. 76 at 4.) According to Rhoads this approach ties into the circumstance that the Dry Dock here would qualify as a "special use" property "because of its quasi-public

---

[1] We are unaware of what distinction, if any, the parties give to the definition of "special use" as opposed to "special purpose." We will refer to this as "special use" to mean both special use and special purpose.

ownership and location, and because it would be nearly impossible for Rhoads to replace." (*Id.* at 1.) At the same time, they assert that "[i]f Defendants contest this [position], it is for the jury to decide." (*Id.* at 7.)

The Defendants reject the notion that this is a "special use" property, and assert that the Dry Dock is part of a private commercial enterprise and that it does have an ascertainable fair market value. (Doc. 77 at 6, 7.) They urge that the appropriate measure of damages is to follow the general rule of determining the lower of the cost of repair or the fair market value of the property at the time of the loss. (*Id.* at 7.) They further contend that the court should find as a matter of law that the "special use" exception does not apply. (*Id.*)

**DISCUSSION**

As do the parties, we proceed under the premise that the property is reparable. We also accept that in general, reparable damages to real property are determined based on the "lesser of the cost of repair or the market value of the affected property." *Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 898 A.2d 590, 596 (Pa. 2006) (*citing Lobozzo v. Adam Eidemiller, Inc.*, 263 A.2d 432, 437 & n. 6 (Pa. 1970). The caselaw has carved out, however, an exception to this general rule for "special use" property, for which damages must be calculated based on the complete "cost of replacement" without regard to fair market value. *Commonwealth Department of Transportation v. Estate of Crea*, 483 A.2d 996 (Pa. Cmmw. Ct. 1977).

This exception was applied in *Crea* where an intoxicated driver drove into a bridge, causing its collapse. 483 A.2d 996, 998 (Pa. Commw. Ct. 1977). In considering the approach to damages, the court held that "[w]here concepts of value in a commercial sense cannot be applied because a particular structure *in the public domain* simply doesn't have any such value, speculatively or otherwise, the measure of damages must be the reasonable cost of replacement by a similar

2

structure consistent with current standards of design." *Id.* at 1002 (emphasis added). In *Crea* the court determined that the damaged bridge was a "special use" property given that it was "in the public domain" and added that any efforts to assign a market value would be "wholly speculative." *Id.* at 1001.

In *Mineral Products* the court extended the exception in *Crea*, applying it to a government building where the market value could be determined. The defendants in *Mineral Products* argued that because the market value of the property could be ascertained it should not be deemed a "special use" property. The court, however, responded by explaining that it "has not categorically and immutably confined special-purpose valuation and/or the relevance of replacement or reproduction costs to instances in which market valuation is impossible." 898 A.2d at 598 n.6. Rather, the court stated that other factors could support the characterization. *Id.* Ultimately, the court concluded that "in light of the unique attributes of the T & S Building, chief among which are its public purposes and location on the Capitol campus, the structure *could fairly be deemed by a fact finder* to represent a special-purpose property." *Id.* (emphasis added). Pointing to these factors the court left the question of whether the property was deemed a "special use" property to the fact finder: "these factors would support a jury finding that the T & S Building had no value in the commercial sense and that the proper measure of damages, therefore, was its replacement cost." *Id.* at 597. What is important for us in the *Mineral Products* decision is not the particular characteristics of this building as compared to the bridge in *Crea* or the Dry Dock here, but rather that the question was to be left to the jury. Such must be the case here.

We accept that some subsequent cases have resolved this issue as a matter of law, but those were cases where there was little doubt that the properties involved could not be deemed "special use." *See Strausser Enterprises, Inc. v. James D. Morrissey, Inc.*, 2014 WL 10979806, at *2 (Pa.

3

Super. Ct. Mar. 10, 2014) (holding parking lot is not "special use"); *Arch Ins. Co. v. Carol & Dave's Roadhouse, Inc.*, No. 2:11-CV-801, 2013 WL 607829, at *3 (W.D. Pa. Feb. 19, 2013), *aff'd,* 567 F. App'x 131 (3d Cir. 2014) (granting defendant's motion in limine and refusing to extend the exception in *Crea* to a firehouse); *Herring v. City of Jeannette*, 47 A.3d 202, 205 (Pa. Commw. Ct. 2012) (explaining that where the "only assertion of uniqueness" is that "all real estate is unique" the claim was not enough to establish "special use" property). We appreciate that the record is not complete and the parties are likely to produce expert reports that may be relevant to this question, but we must conclude that there are factual disputes integral to the "special use" determination, leaving us to conclude—at least at this stage—that this determination must be left to the jury.[2]

**CONCLUSION**

At this stage and for the reasons presented we deny Defendant's request that the property be deemed not "special use." We similarly deny Rhoads' request that we determine on the record before us that the property be deemed "special use." These conclusions are without prejudice to any party to file motions in limine upon the close of the record.

---

[2] The first dispute is whether we are dealing with a public structure. Rhoads claims that the property has "quasi-public ownership." (Doc. 76 at 1.) On the other hand, Defendants point out that "the dry dock is not available to and freely used by the public," but rather it is "privately leased." (Doc. 77 at 6.)

The significance of the property's location is also in dispute. Rhoads has emphasized the unique nature of Dry Dock 2's location, pointing to "its location in the Navy Yard on the Delaware River" and observing that "there are a limited number of comparable properties in the region." (Doc. 76 at 4.) In contrast, Defendants claim that "the dry dock is not an inherently unique structure" (Doc. 77 at 6), and point to Dry Dock 3 in support of this argument.

Whether there is an ascertainable market value is also factually disputed. Defendants point to Rhoads' lease agreement for the Dry Dock, which states that rent may be based on "[t]he fair market rental value for similar graving docks and piers." (Doc. 82 at 1–2.) Rhoads claims that "[w]hile a market value can likely be determined for the Dry Dock, that is not dispositive." (Doc. 78 at 3.) Further, they state that "Dry Dock 2 does not have an *easily* ascertainable market value." (*Id.* at 4 (emphasis added.))

4

Date: October 7, 2019

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE