IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHOADS INDUSTRIES, INC., et al | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 15-921 |
| | : | |
| SHORELINE FOUNDATION, INC., et al | : | |

| | | |
|---|---|---|
| RHOADS INDUSTRIES, INC., et al | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-266 |
| | : | |
| TRITON MARINE CONTRUCTION CORP. | : : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                August 6, 2021

### I.     Background

Presently before the Court is Defendants' request to reopen expert discovery related to newly disclosed information. The litigation arises from a situation where Defendants allegedly caused harm from construction projects involving pile driving at the Philadelphia Navy Yard ("Navy Yard") and within the vicinity of certain properties and structures leased by Rhoads. In relevant part, Rhoads' property includes Dry Dock 2 ("the dry dock") and Building 669. The Defendants are each contractors who were employed by the Navy to perform the pile driving projects. TranSystems and Shoreline were contracted for work that involved driving piles on various occasions in the area to the west of the dry dock from August 2011 through January 2013 (the "2013 pile driving"). Triton was involved later driving piles at various times in 2014 and 2015 in the area to the east of the dry dock (the "2015 pile driving"). Following more than two years of

fact discovery (Doc. 12; Doc. 78), the Court set a deadline for expert discovery to be completed by February 28, 2020. (Doc. 78.) That deadline was extended several times until expert discovery finally closed on January 15, 2021 (Doc. 127), having lasted more than a year's time. The parties then submitted as many as eleven Daubert motions, which were resolved by Memorandum Opinion and Order on July 2, 2021 (Docs. 177 & 178). The expert testimony has focused upon the effects the Defendants' pile driving operations in the 2013 and 2015 projects may have had on Rhoads' property, if any, and the extent of any harm caused by it.

On June 24, 2021, Rhoads informed the Court and Defendants, via letter, that new pile driving activity, unrelated to the Defendants or their previous pile driving projects, had taken place beginning in December 2020 and continued into May 2021 at the Navy Yard in the vicinity of Rhoads' property, and that Rhoads employees noticed new damage to the dry dock consistent with that which accompanied the previous pile driving. As with the previous projects, the pile driving was being performed by a contractor employed by the Navy. Correspondence between Rhoads, the Navy, and that contractor shows that Rhoads advised the Navy and the contractor in January 2021 to take precautionary measures, as the area where the work was being done was "vulnerable." On April 14, 2021, Rhoads sent a second letter, informing the Navy and its contractor that damage was occurring and instructing them to cease and desist. It then sent a third letter to that same effect on May 25, 2021. Further, Rhoads' experts performed a "non-invasive" site inspection and installed vibration monitoring devices, but did not do so in time to capture any vibration data from the new pile driving.

We convened a conference call with counsel to discuss this new information on June 28, 2021. We then ordered them to submit letter briefs setting out their positions on whether to reopen expert discovery related to the new pile driving. In the interim, counsel for Rhoads and Defendants

coordinated a counsel-only site visit on July 12, 2021, so that Defendants' counsel could view the property. Defendants submitted their letter in support of reopening discovery on July 20, 2021, and Rhoads submitted its letter in opposition on July 26, 2021. We held oral argument regarding the request on August 3, 2021. Having carefully considered the information provided to us, we deny Defendants request.

## II.   Discussion

Our concern with the Defendants' request to reopen is that we are unconvinced that the information sought is relevant or, even if it is, would be admissible under Fed.R.Evid. 403. We also conclude that the scope of the request is disproportionate to the needs of the case. At the outset, we observe that requests to modify the scheduling order, such as this request to reopen discovery, are generally governed by Fed.R.Civ.P. 16. That rule provides that the scheduling order may be modified only for "good cause." Fed.R.Civ.P. 16(b)(4). While the Defendants could assert that they have established "good cause" in terms of timeliness, that good cause must take into account, here, the question of its relevance to the pile driving in 2013 and 2015. We accept that the information concerning this question was promptly brought to the attention of the Court and opposing counsel. We are unwilling, however, to characterize it as supported by good cause given the tenuous connection it may have to the 2013 and 2015 cases. We conclude that the information that Defendants now seek to obtain is outside the proper scope of discovery.

Fed.R.Civ.P. 26(b) limits the scope of discovery to that which is relevant and proportional to the needs of the case:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1). In turn, "relevant" evidence is that which has any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. Fed.R.Evid. 401. Further, Fed.R.Civ.P. 26(b)(2) provides that:

> "the court *must* limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed.R.Civ.P. 26(b)(2)(C)(i)–(iii) (emphasis added). Additionally, Fed.R.Evid. 403 provides that even relevant evidence is not admissible at trial "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

We note first that we need not be concerned about the relevance of this evidence as to damages in that Rhoads has expressly stated that it is cutting off its damage claims through December 2019. The parties dispute, however, whether the new information related to the new pile driving is relevant to the questions of causation and liability.

Defendants argue that the new pile driving is relevant for several reasons, none of which are availing. First, they argue that it bears on their defenses regarding Rhoads' comparative negligence and the negligence of the Navy. Specifically, Defendants contend that the fact that Rhoads in 2021 warned the Navy and its contractor of the vulnerability of their property and advised them to take precautionary measures is evidence of Rhoads' negligence in allegedly failing to warn the Defendants' in 2013 and 2015. We are not persuaded. Whatever duty Rhoads may or may not have had in 2013 and 2015 either existed at that time or it did not. Rhoads' conduct in 2021 cannot retroactively create a duty to the Defendants in this litigation. Nor can Rhoads' recent

conduct in 2021 alter its past conduct in 2013 and 2015 to retroactively create a breach of any duty that may or may not have existed. Accordingly, we conclude that evidence related to the new pile driving has no tendency to make any fact related to Rhoads' alleged comparative negligence more or less likely than it would be without the evidence. Fed.R.Evid. 401. Further, even if this evidence were relevant, we find that it presents a significant danger of "confusing the issues" and "misleading the jury." Fed.R.Evid. 403.

Next, Defendants contend that the Navy's conduct in 2021 bears on their defenses related to the Navy's alleged negligence in the 2013 and 2015 pile driving projects. For the same reasons that we have determined Rhoads' recent conduct is not relevant, we are similarly not persuaded with regard to discovery that may be sought from the Navy. Essentially, Defendants argument is that the Navy was negligent in the 2013 and 2015 projects in not requiring "a pre-construction survey, vibration studies or geotechnical studies," and that, if the Navy did require those precautionary measures in the 2021 project, that would be evidence of their negligence eight and six years earlier. That argument is unavailing. As we have already set out above with respect to Rhoads, whether the Navy was negligent in 2013 and 2015 is not affected by its conduct in 2021. Its most recent conduct cannot retroactively create any duty, nor can it retroactively impact whether the Navy breached any alleged duty. Any evidence related to the Navy's conduct in 2021 thus has no tendency to make it more or less probable that the Navy was negligent in 2013 or 2015, and it presents the danger of confusing the issues and misleading the jury.

Further, Defendants argue that evidence related to the 2021 pile driving bears on their position regarding causation. That is, one of Defendants' overarching contentions in this litigation is that damage at Rhoads' property sustained in 2013 and 2015 was not caused by pile driving at all, but rather was the result of ongoing deterioration of the dry dock due to a lack of maintenance

by Rhoads. Defendants represent that at the July 12, 2021 counsel-only site visit, they observed damage and evidence of ongoing subsidence, which they believe is *not* related to the 2021 pile driving. They thus contend that, if there is continuing damage at the dry dock which was not caused by the 2021 pile driving, that circumstance would bolster their argument that pile driving generally is not the cause of damage at the dry dock, including the damage sustained in 2013 and 2015.

We are unpersuaded by this argument. First, we find that whether the 2021 pile driving did or did not cause damage is too attenuated to have any bearing on whether the 2013 and 2015 pile driving caused damage. Indeed, it occurred eight and six years after Defendants' pile driving projects, respectively, and in a different location than the previous projects. Second, to the extent that Defendants allege any new information is relevant to their "ongoing deterioration" theory of damages, they had "ample opportunity" to obtain that information throughout discovery. Fed.R.Civ.P. 26(b)(2)(C)(ii). To be sure, Defendants' theory hinges entirely on their belief that the 2021 pile driving did *not* cause the damage they observed at the site visit. That is, their contention on this point is that damage continually occurs at Rhoads' property *in the absence* of pile driving. But their ability to investigate and pursue that theory is not dependent in any way on the occurrence of the 2021 pile driving. In fact, if anything, the occurrence of the 2021 pile driving hinders Defendants' ability to pursue the argument that damage occurs independent of any pile driving. Rather, Defendants had "ample opportunity" to pursue this theory by conducting regular, ongoing site inspections throughout discovery or requesting ongoing updates from Rhoads as to the condition of the property. They did neither. Accordingly, we will not permit Defendants to utilize

the happenstance of the 2021 pile driving to shoehorn in an unrelated theory of causation, which they had the opportunity to pursue previously.[1]

Finally, we conclude that the evidence Defendants seek is not "proportional to the needs of the case, considering," *inter alia*, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). As we have explained above, any benefit of the proposed discovery is minimal. However, the process of acquiring it would be expansive. Specifically, Defendants have proposed that we extend expert discovery and permit them, among other requests, to conduct depositions of "all Rhoads employees involved in investigating the new construction," to "subpoena the Navy and their contractor(s) . . . for any and all records relating to the construction project," and to "issue supplemental expert reports." *See* Defendants' Proposed Order, attached to July 20, 2021 letter. This undertaking would undoubtedly be burdensome and expensive, and almost certainly fruitless. For example, at oral argument, counsel reported that obtaining discovery from the Navy concerning the projects is cumbersome and estimated that the entire discovery undertaking may take up to a year or more. Accordingly, the discovery that Defendants seek is plainly disproportionate to the needs of the case. Additionally, as we have noted throughout, even the evidence could be said to be relevant and proportionate to the needs of the case, we conclude that it would be precluded under Fed.R.Evid. 403, as it presents significant danger of confusing the issues, misleading the jury, undue delay, and wasting time.

---

[1] In addition to being outside the scope of discovery pursuant to Fed.R.Civ.P. 26(b)(2)(C)(ii), we also find that there is not "good cause" pursuant to Fed.R.Civ.P. 16(b)(4) to modify the scheduling order to permit further discovery on this point. As we have set out here, Defendants had ample opportunity to pursue this theory throughout the discovery period. Their ability to do so was not contingent upon the occurrence of new pile driving. Consequently, it cannot be said that Defendants' were "diligent" in pursuing this evidence, as is a "critical factor" in the "good cause" analysis. *See Martin v. Buono*, 2021 WL 1424711, at *3 (E.D. Pa. Apr. 15, 2021) (citing Fed. R. Civ. P. 16(b), Advisory Committee's Note to 1983 Amendment).

**III.     Conclusion**

For the reasons set out above, Defendants request to reopen expert discovery is denied, [2] as the evidence it seeks is not relevant and is not "proportional to the needs of the case." An appropriate order follows.

---

[2] This decision should not be construed as disturbing any voluntary agreement among counsel that Defendants be permitted to certain limited forms of discovery.